51 CCPA

**Application of Jean H. BERTIN and Benjamin J. M. Salmon.**

**Patent Appeal No. 7003.**

United States Court of Customs and Patent Appeals.

Nov. 14, 1963.

Richard E. Babcock, Jr., Watson, Cole, Grindle & Watson, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C., (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from a decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 15, 16, 17, 18, 19 and 20, the only remaining claims of appellants' application serial No. 584,369, filed May 11, 1956, for a FLAME-HOLDER OF THE ELIMINABLE FLUID-SCREEN TYPE. The application relates to the construction of a combustion chamber, such as a jet engine after burner, in which fuel is to be burned inside a stream of gas flowing at a high speed.

Claims 15, 19 and 20 are representative and read:

"15. In a combustion chamber traversed by a *high speed* fluid vein, a flame stabilizer of the retractable fluid screen type comprising a plurality of radially directed nozzles adapted to produce, when fed fluid under pressure, transverse jets in the said chamber, said nozzles being concentrated in at least two zones staggered in the direction of flow of the fluid vein, and being concentrated within said zones along angularly staggered sectors in such a manner that a sector with a high density of nozzles located in one zone is not situated behind, with respect to the fluid vein, a sector with a high density of nozzles in the other zone. [Emphasis ours.]

"19. Flame stabilizer according to Claim 15 in which within each zone the nozzles are arranged along part of a helix.

"20. Flame stabilizer according to Claim 15 in which the combustion chamber is annular and limited inside by a wall which has two strongly tapered parts separated by a cylindrical part, the nozzles being arranged on said cylindrical part near the ends."

Claim 16 adds to claim 15 a recitation that within each zone the sectors with a high density of nozzles are separated from each other by sectors without nozzles. Claim 17 calls for a stabilizer in accordance with claim 16 in which each zone comprises two sectors with a high density of nozzles, which sectors subtend vertically opposite angles. Claim 18 adds to claim 15 the limitation that within each zone the sectors with a high density of nozzles are separated by sectors with a low density of nozzles.

In the construction of appellants' combustion chamber, radially directed nozzles fed with air under pressure are provided in at least two different zones spaced from each other in the direction of flow of the stream of gas constituting the main jet. The nozzle arrangement produces at least two spaced fluid screens and is said to fix and stabilize the flame in the combustion chamber without giving rise to "appreciable" vibrations which are liable to lead to fracture.

Two embodiments of the construction disclosed by appellants are shown in Figs. 1 and 2 of their application reproduced below:

Fig. 1 shows nozzles provided in the support $i$ in what are described as two "planes," $P_1$ and $P_2$, at right angles to the axis of the exhaust nozzle, each "plane" including three rings of nozzles formed by small holes 4 drilled in the wall of the support. The application states that the holes may be directed in such manner that the jets of air are discharged at right angles to the direction F of the main jet inside the exhaust nozzle or may also be inclined toward the upstream side or the downstream side of the main jet.

In discussing Fig. 1 in the application, appellants state:

"At least two successive flame-fronts are created at different places, and this gives rise to the super-position of at least two series of vibrations which may be caused to act in opposition and to annul their total effect by a suitable location of the origin of the flame-fronts."

The embodiment of Fig. 2 is described as differing from that of Fig. 1 in that the distribution of the nozzles in the "planes" $P_1$, $P_2$ is non-continuous. Thus,

in the "plane" $P_1$, "there are two opposite sectors having an angle $\alpha$ at the centre, covered by the holes 4, whilst the plane $P_2$, similarly comprises only two sectors of holes 4 forming an angle $\beta$ at the centre, corresponding to the sectors of the plane $P_1$ which have no holes." It is further stated that it is preferable to give the sectors a slight overlap, of 10 degrees for example, in order that "the turbulence created by the fluid screens staggered by sectors from one plane to the other may be more uniform, * *."

The references relied on by the examiner and the board are:

Fyffe            2,531,810   Nov. 28, 1950
McGarry          2,541,171   Feb. 13, 1951
Lovesey          2,771,743   Nov. 27, 1956
French Patent 1,085,458   July 28, 1954

The Lovesey and French patents disclose combustion chambers which are traversed by high speed fluid veins and employ flame stabilizers in the form of fluid screens. Lovesey's device comprises a plurality of axially spaced annular ring members each having a plurality of

orifices for injecting jets of air into the fluid vein transversely of the direction of flow.

The French patent also discloses arrangements involving two annular ring members spaced axially of the chamber for injecting air into the vein under pressure transversely to the direction of flow, including in a radial direction, said members being shown in the drawings as of different diameters. However, the features of that patent primarily stressed by the board are shown in Figs. 5 and 6 thereof, reproduced below:

In these drawings, Fig. 5 shows a combustion chamber in axial section while Fig. 6 is a partial cross-section taken on line VI–VI of Fig. 5.

In the illustrated construction, high speed fluid, which may be from a gas turbine, passes through the combustion chamber from left to right in Fig. 5 and fuel is introduced into the fluid by injector 1 at the upstream end. Four hollow arms 18 extend radially at right angles from the center of the combustion chamber at one plane transverse thereof and are adapted to feed compressed air into the chambers through radial slots 17 therein. In a second plane spaced downstream from that of arms 18 are four similarly disposed arms 22 adapted to feed compressed air into the chamber through orifices 8. The arms 22 are not in axial alignment with arms 18 but instead are arranged in positions facing the spaces between the latter arms. Slots 17 in arms 18 may be replaced by small orifices similar to the orifices 8 in the arms 22 and the compressed air discharged from the arms may be supplied through a streamlined central body 23 which carries the arms.

The Fyffe and McGarry patents both disclose air inlet arrangements for combustion chamber flame tubes. In both patents air is fed into the combustion chamber through a plurality of inlets disposed in circumferentially staggered relationship along the axis of the chamber.

The examiner rejected the appealed claims as unpatentable over either the French or Lovesey patent in view of either of the Fyffe or McGarry patent. It was his view that both the Fyffe and McGarry patents show the expedient of staggering a plurality of nozzles angularly and axially about the axis of a burner. He regarded the use of such expedient on the flameholder of the French patent or Lovesey patent, whereby the axially spaced nozzles would be grouped in staggered sectors angularly of the axis, "would not involve invention" but would be simply a matter of design providing no new or unobvious result. The helical orientation of the nozzle openings as recited in claim 19 and the double tapered nozzle manifold with the intermediate cylindrical section as recited in claim 20 were likewise considered by the examiner to be merely matters of choice or design.

In affirming the examiner's rejection, the board placed particular emphasis on the arrangement disclosed in Figs. 5 and 6 of the French patent, referring to that embodiment as disclosing staggering the nozzle openings circumferentially of the combustion chamber and concluding that "the French reference clearly discloses the basic concept of the nonsymmetrical nozzle arrangement upon which appellants primarily predicate patentability." The board further stated that the French reference discloses "fore and aft groups of nozzles having substantially equal penetration of the main jet stream" and considered it obvious "to effect such penetration by a central discharge manifold of the type herein recited."

Appellants state that McGarry and Fyffe merely utilize air streams to successively spread the flame in the combustion chamber in different radial directions and do not relate to stabilizing a flame in a combustion chamber "traversed by a high speed fluid vein." They regard the function of the air streams in these two patents as totally unlike the action of their jets in penetrating the high speed vein to form a fluid screen and find nothing in these patents to suggest combining their teachings with the disclosures of Lovesey and the French patent.

Discussing what they describe as the "Board's Added Rejection," which they refer to as based on the French patent alone, appellants state that the board failed to accord proper weight to the requirement in claim 15 that the nozzles are radially directed. They argue that the nozzles of Figs. 5 and 6 of the French patent form jets in paths which intersect in each axial zone so that the screen in each zone is thus in a complete circle.

Although the application is silent as to any advantage of the staggered arrangement of orifices over the non-staggered constructions shown in appellants' Fig. 1 along with Lovesey and some forms of the French patent, appellants contend that the circumferentially staggered disposition of the nozzle concentration in different zones achieves the suppression of vibration "with considerably lesser impedance to the flow of the high speed main fluid stream than arises where the main fluid vein is penetrated by two complete circles of jet concentration."

We find no error in the board's view that claim 15 is shown to be unpatentable by the French patent. It is clear that the arrangement of Figs. 5 and 6 of that reference does not provide the same distribution of nozzle air in both sectors but instead produces in the words of claim 15, "a sector with a high density of nozzles located in one zone" which is "not situated behind, with respect to the fluid vein, a sector with a high density of nozzles in the other zone." Thus, as stated by the board, the patent "discloses the basic concept of the non-symmetrical nozzle arrangement upon which appellants primarily predicate patentability." Moreover, we find nothing unobvious in attaining this basic concept by the use of radially directed nozzles. While the nozzles of Figs. 5 and 6 are not considered radially directed, it is obvious that the forms of the French patent device utilizing annular stabilizer rings do direct the air forming the fluid screen radially.

We do not find anything unobvious required by the additional recitations set out in claims 16, 17 and 18.

Claims 19 and 20, however, present different questions. The requirement of claim 19 that "within each zone the nozzles are arranged along part of a helix" is not shown in any of the references. The board stated that it found no evidence of criticality in the recited arrangement and concluded on that basis that such arrangement involves merely one of arbitrary choice. In the absence of any suggestion of a helical arrangement of nozzles in the prior art, however, we are unable to conclude that the recited arrangement is obvious.

Claim 20 calls for the general shape of the inner wall of the combustion chamber illustrated in appellants' Figs. 1 and 2 with the nozzles arranged on the cylindrical part thereof near the ends. That particular arrangement is not shown in the prior art. The board appears to have regarded the construction obvious on the

basis that it results in equal penetration of the fore and aft groups of nozzles into the main jet stream which it found to be taught in connection with the construction of Figs. 5 and 6 of the French patent. We do not agree with that reasoning and are of the opinion that neither the French patent nor any other art of record renders obvious the specific structure of claim 20.

For the foregoing reasons the decision of the board is affirmed as to claims 15 through 18 and is reversed as to claims 19 and 20.

Modified.